Thank you, Your Honor. May it please the Court, Brett Shumate for the appellant, Jason Gold, the Chapter 7 trustee. With the Court's permission, I'd like to reserve five minutes of my time for rebuttal and share five minutes of my time with Mr. Reed, who is here today on behalf of the National Association of Bankruptcy Trustees. It's fine. The 2005 amendments to the Bankruptcy Code fundamentally changed the way Chapter 7 trustees are compensated. Instead of bankruptcy courts awarding what they think is reasonable, Congress has already determined what is reasonable, and has instructed courts to reward Chapter 7 trustees based on their results. We know this for three reasons. The first is that Congress said in Section 330A.7 that courts shall award Chapter 7 trustees a percentage of the estate as a commission. Second, Congress has also determined that the percentages in Section 326 are reasonable, because the statute also tells us the commission must be based on or derived from Section 326. Third, because Congress has already determined that the percentages in Section 326 are reasonable, there must be a very high bar for a bankruptcy court to depart from what Congress has already determined is reasonable. So your argument is not that – your argument isn't that courts retain no discretion in determining what constitutes reasonable compensation, but that the amounts – the commission basis is presumptively reasonable and is the starting point from which the court must depart and must justify any deviation from. I wouldn't fully agree with that statement, Your Honor. I think you're very close. Our position is that Congress has already determined that those percentages are reasonable. A court still has discretion in the extraordinary case to depart downward. We think there still has to be a very high bar to depart from what Congress has already said is reasonable. But you argue that – yeah, but you do argue for a presumption. You can call it a presumption or preference or something. That seems to be – it seems to be a bit semantic if you're going to say it's a very high bar. Because there is tension there with respect to courts retaining – courts having discretion to do it. Right. We agree courts do have discretion. The question is when can they exercise that discretion. So we're careful not to call it a rebuttable presumption because we think Congress has already said these percentages are reasonable. So the question is when can a court depart from what Congress has said is reasonable. And I think you have to have it at a very high bar. Because we know that Congress, when it used the phrase based on, it indicated that reasonableness has to be judged based on the percentages in Section 326 and the results that the trustee has brought in for the creditors. The statute says money is dispersed or turned over. And I don't think Congress would have linked the percentages in Section 326 to the commission language if it didn't think those percentages are reasonable in the vast majority of cases. So a plain reading of those statutes together would indicate that the low-star method of setting a fee were abrogated by Congress. That's correct, Your Honor. When Congress amended – so Section 330 gives you two different ways of judging the reasonableness of a trustee's compensation. It can be either A3 or A7. And in A3, Congress took Chapter 7 trustees out of that when it said Chapter 11 trustees. And so now, Chapter 7 trustees, their compensation is governed only by subsection A7. And A7 points you to 326 to judge the reasonableness of that compensation. And so Section 326 today has to be more than just a cap on fees. Because Congress used the words based on. And this Court's precedent interprets that phrase to mean derived from. We know that before BAPSIPA, Section 326 was just treated as a cap. But Congress used different words in Section 330. It used the phrase based on, not subject to, which appears in 330A1. So when Congress uses different words in the statute, we have to give them different meanings. Well, assume you prevail and it goes back to the bankruptcy court. There appears in the record to be some dissatisfaction by the bankruptcy judge about the trustee's performance. You're not asking us in this case to determine what that high bar is, are you? Well, we're asking the court to set a high bar and explain that the courts have to award the statutory commission percentages unless there's something extraordinary about the case. But I don't think the court needs to decide whether this case meets that standard. Because the trustee would welcome the opportunity on remand to show why his performance met all acceptable standards. But he just never got that opportunity in the bankruptcy court. So I think we're talking about the remedy. The right remedy here, I think, is to recognize, first and foremost, bankruptcy court didn't award a commission. The statute says that has to be done. It's also undisputed that the trustee's fee award is not in any way based on percentages in Section 326. Bankruptcy court just awarded what it thought was reasonable based on the trustee's hourly rate. No, based on the trustee's performance. What he said on page 148 of the appendix. He defaulted to hourly rate from the commission rate because of the performance. That's right. But you said based on hourly rate. It was based on hourly rate, but that was what he defaulted to because he determined that the trustee's performance was not reasonable. That's correct, Your Honor. We think that was error because the statute still says the trustee's fee award has to be based on or somehow derived from Section 326. But it wasn't in this case. We don't think there's anything extraordinary about this case that could possibly justify slashing the trustee's compensation by 50% when the trustee brought in over $280,000 for the creditors. What are the metrics of extraordinary? How would you define that? I think the United States trustee has done a perfect job and the court should adopt their standard. It's something that's rare and unusual about a case. Based on industry custom. Such as what? So, for example, the United States trustee has identified a circumstance where the trustee delegates all of his responsibilities. Wait, wait. You're saying the bankruptcy court can't do it sua sponte? You're not saying that. Find extraordinary circumstances? I asked you what are extraordinary circumstances and you started your answer each time with the United States trustee says X. Forget the United States trustee for a moment. What about the bankruptcy court? The bankruptcy court's going to be in the best position to know what is extraordinary based on industry custom and practice. So certainly the court has to have some discretion. But this court needs to set a high bar for what is. You keep saying a high bar and I'm trying to get you to tell us where that bar is. How would I know it if I walked into it and bumped my head? Bankruptcy courts are going to have to flesh this out in cases where. So if the bankruptcy court in this case, if we send this back and the bankruptcy court says I find, I make additional facts. Which frankly, I'm a little surprised the trustee appealed this case in all honesty. Because what you're asking for is for the bankruptcy court to be a little more detailed in his criticism. No, what we're asking for is an opportunity to show why the trustee's performance met all acceptable standards. He had an opportunity to do that. You want a second opportunity to do that. And the district court made pretty clear factual findings to why he considered the circumstances surrounding the fee request to be extraordinary. He found that the trustee delayed the administration of the estate for more than a year without excuse or reason. That the delay was injurious to creditors, including the debtor's former spouse. What do you, even if you need a high bar, why doesn't that meet a high bar? Your Honor, you're reading from the court's stay order. Which was issued 11 weeks after the hearing, after the case was already on appeal and fully briefed in the district court. Trustee never had an opportunity to address the court's specific concern about injury to creditors. Because it was raised for the first time after the hearing. We would love an opportunity on remand to present testimony. Have the trustee himself testify about why he did a good job in this case for the creditors. I take it you don't care, at the end of the day, as long as they call it a commission. As opposed to hourly rate fee or something like that. I don't think you can just call it a commission. So if the bankruptcy court in this case had just said it was a commission, that wouldn't be enough. Because he never judged the trustee on the only metric that matters. Which is how much money did the trustee bring in for the estate. See, that's not true. That's flatly not true. It's not just a question of how much money the trustee brought in. It's how the trustee performed. Whether there was delay. Whether any creditors or interested parties were prejudiced. And how much prejudice. I mean, you don't disagree with that, do you? I think those factors are relevant to the determination of whether there are extraordinary circumstances. And they're relevant to what the ultimate fee award is when the court's already found extraordinary circumstances. But the kind of factors in the ordinary case, those shouldn't play any role in the vast majority of cases. Because Congress has said in 330A7 that the only metric that matters are the results. And that's the... That's not part of the results? Whether a creditor is prejudiced? Well, when the statute says based on section 326, it points you to the percentages in the... I don't know, I see my time is up. I'll quickly... You may respond because I have another question, too. Go ahead. Sure. The question is how you judge reasonableness. That's really the heart of this case. And so it used to be we judged the trustee based on the value of his services using the factors in subsection A3. Congress said, we're going to change it. We're going to adopt a commission-based system that's incentive-based, that tries to reward, requires courts to reward trustees based on the money they bring in for the creditors. That's what matters now. It doesn't matter what the value of the trustee's services are. Or even how they perform their job. Under your assertion, a trustee could behave unprofessionally in a number of ways and be insulated by the fact that ultimately money was brought in to the estate. No, Your Honor, that's not our position because I think that would be a good example where a court could exercise the discretion in subsection A2 to award less compensation because of extraordinary... And that's exactly what the court did here. The court found that the trustee's behavior was below acceptable professional standards. But it was based on no objective standard at all. He just awarded what he thought was reasonable based on the facts of this case. That's what they do. They award an amount within the exercise of their discretion on the basis of the facts of this case. And the trustee has the burden of proof, does it not? He does, and he discharges that burden of proof when he... No, he has the burden of proof of justifying the amount of his fee. And on the basis of what he put forward, the bankruptcy court, in its discretion, found that the standard of behavior was unacceptable. Even accepting that to be true, Your Honor, at the end of the day, he didn't award a commission, and this fee award is not in any way based on percentages in Section 326. So in terms of the remedy, the court should... But the district court has discretion to depart. The bankruptcy code didn't alter 326, which indicates that courts retain the discretion to determine what amount of compensation is reasonable. I'm glad you brought that up, Your Honor, because you can't just read Section 326 in the abstract. But that's what you referred me to. That's the only reason I went back there. I'm not reading it in the abstract. I'm referring back to it as you did. Section 326 doesn't tell you how you judge the reasonableness of the fee. It points you back to Section 330 for both Chapter 11 and Chapter 7 trustees. Section 338-7 is the most specific statute that we have. It tells us how to judge the trustees' fee. I think you have some time on rebuttal. Thank you. Thank you, Your Honor. Mr. Reed, I believe, you're next. May it please the Court, I'm Neville Reed here on behalf of the National Association of Bankruptcy Trustees. Your Honor, 75% of all bankruptcy trustees are members of the NABT. The NABT, on behalf of all trustees, was instrumental in working with Congress to adopt the commission language in Section 330-A-7 of the Bankruptcy Code as part of the 2005 Debt Receivable Amendments. We support the appellant, Trustee Gold, and urge the Court to vacate and remand in this case. The NABT also asks the Court to hold, as the Salgado Court did in the Ninth Circuit, that absent of extraordinary circumstances, the Chapter 7 trustees' compensation shall be calculated as a commission based on the rate schedule in Section 326, what we'll call the Salgado Rule. There are at least two reasons why the Salgado Rule should be adopted and make sense. First, it's really the best way to give purpose to the entire statutory scheme in Sections 330 and 326. I believe that my colleague, Mr. Shumate, has reviewed that in sufficient detail. But equally important, that rule would best promote one of the cardinal policies behind Section 330 of the Bankruptcy Code, which is to fairly compensate and incentivize trustees. Mr. Reed, how would you articulate extraordinary circumstances? Your Honor, yes. I would say extraordinary circumstances would be those circumstances under which, based on the custom and practice for the trustee in that particular district or their region, would be rare and unusual. So the guild would set the standard of care, so to speak, or the standard of performance, and everybody would get a commission at the maximum rate if everybody agreed to work at the same level, which could be very low, very poor, average, slightly above average. Do you see what I'm trying to understand? Your Honor, it would not be a self-serving rule. First of all, I think extraordinary circumstances would have to be strictly construed to make sure that judges don't use it to circumvent the congressional intent behind 337. But why would a judge be interested in circumventing congressional intent? Well, Your Honor, some judges who have a view that Lodestar is the way they should go, like some of the courts post-Bepsi have done, might try to use extraordinary circumstances in a loose way to say, let's just ignore the commission as a judge here and go back to Lodestar. I take it the submission of the appellants and Miki is that the judge here should have stated on the record, okay, you're presumptively entitled to this amount. Now I'm going to take reductions from that amount. And if he had come out the same way at the same number, that would have been okay, apart from whether or not you agree with his identification of extraordinary circumstances. That's what this case comes down to. Your Honor, yeah, but I think there's a material difference in the procedure that you outlined. Because if a judge starts at a high level of, okay, the Congress has said the commission is my starting point as opposed to the end point. Okay. And if he has to have a compelling reason, extraordinary reason deviated from that, he's going to look more carefully at whether the circumstances really were extraordinary, which means you should be allowed to bring in evidence of what is customary for those particular duties. And, Your Honor, in this case. But you understand the problem that I, for one, have with that idea. In other words, you're saying in a region, in a district, with really lousy trustees, for whatever reason, who routinely default in their responsibilities with the acquiescence of the U.S. trustee, the court has no control over lifting the performance of those trustees. No, Your Honor, we're not saying that at all. No, absolutely not. I think that's the unavoidable implication of what you're saying. Because 330A2 does still give the judge independent discretion to determine whether, even after you set the commission initially, do extraordinary circumstances exist. So I think it would be. But under your definition of extraordinary circumstances, the judge could only look to sort of some median performance by the local trustee. That would be a data point, Your Honor. I mean, it would have been helpful in this case. But what if the judge thinks all of them are lousy? Well, then, Your Honor, first of all, I think that's an unusual circumstance where, given how selective the panel is, you'd have trustees that are all bad. But it would not have been too much to ask in this circumstance if Mr. Gold could have been offered the opportunity to bring in evidence from the region or from the district or from the nation. See, as trustees, we're not just compared to the district. We're also compared to the nation when we come to the purview. Why didn't he do that? He has the burden of proof to justify his feat. If he didn't do that to satisfy his burden, why should he get another chance? The district court's findings, in fact, were extensive in damage. There was an unexplained delay in closing the estate. The last funds were received. Gold didn't timely file his report. The delay resulted in the estate incurring a significant banking charge. The delay harmed creditors, including the debtor's spouse. He didn't adequately supervise the case. An unreasonable amount of time was spent on straightforward tasks. Your Honor, those were mentioned in the middle of the hearing. There was no meaningful opportunity in advance of that hearing for Mr. Gold to have done that. And I might add to you, Your Honor, that the practice in most jurisdictions is to first meet and confer with the U.S. trustee, which Mr. Gold did. Mr. Gold, in conference with the U.S. trustee, did make an adjustment. There was no reasonable expectation after the U.S. trustee's office failed to object that there would be any basis or any issue with respect to reducing his fee. And if there had been an issue, then it would not have been asking the court too much, as a Salgado judge did, to say, okay, I have an issue with the statutory fee. Let's have the trustee come in personally and present a case, and let's look at evidence of not just the district but the region and the nation to see whether the circumstances here were extraordinary. What do you see the trustee's burden in that regard as? Your Honor, I see the trustee's burden as to meet with the U.S. trustee, seek to get dialogue. No, the trustee's burden. I mean, which trustee, Your Honor, the U.S. trustee or the panel trustee? Mr. Gold would have been his obligation to carry his burden of justifying the fee. Well, the filing of the report, the conference with the U.S. trustee, and the explanation of what the trustee actually did in the case, that would have been a burden. But there should have been a meaningful opportunity to present any evidence in response to the court's concern about whether the duties were adequately performed. And that's the problem here, Judge, that there really was never a meaningful opportunity in advance of those articulated concerns for the trustee to do that. Some of these concerns weren't even mentioned until the Banksy court responded to the motion for stay on appeal. None of those things were dealt with in advance. And due process, at a minimum, requires there to be a meaningful opportunity in advance. Your Honor, I see that my time has expired. Unless, Your Honor. Thank you very much. Thank you, Your Honor. May it please the Court. John Corzine from the Wake Forest Appellate Clinic. Under Local Rule 46, it's my real pleasure to introduce the two students who have worked on this case. First, Mr. Pat Wallace, who will address the Court and take your questions. And second, Ms. Tammy Hsu, who co-authored the brief. Thank you very much, Your Honor. Thank you very much. Mr. Wallace. And welcome. May it please the Court. Statutes must be read to effectuate their plain language, not to support a desired policy. The trustee argues in favor of his desired policy to maximize trustee compensation. But the issue before the Court today is whether, under the Bankruptcy Code, a bankruptcy judge has the discretion to give a lesser amount in trustee compensation than the trustee himself requests. Sections 326 and 330 of the Bankruptcy Code expressly and implicitly give bankruptcy courts the discretion in awarding less compensation than the trustee requests. Therefore, this Court should affirm the lower court's decision. Well, what are they arguing over there? If they'd used the term commission, would that have satisfied the appellant? Your Honor, I'm not sure I can speak to what would satisfy the appellants in this case. The appellants argue in favor of a policy that would maximize trustee compensation, giving them a presumption to the very heights that's listed in 326. The bankruptcy court did not award explicitly a commission. However, you could have expressed the $8,020 as a percentage, which would have satisfied the appellee's desire in this case. As long as it's called a commission. As long as it's called a commission. And that's why this Court should review any sort of error that the lower court did in saying that he's going to award his compensation as an hourly fee as a harmless error. The trustee would be in the exact same spot that this Court would remand this case to the lower court. The trustee, as Your Honor's noted, engaged in extensive fact-finding and decided as fact that the trustee failed in administering the estate expeditiously and injured creditors as a result. In addition, he failed to properly monitor the applications, particularly from his firm. The bankruptcy court, on remand, would simply just express the $8,000. Could we state the same factual findings? That brings me to another point. What about the due process argument? Your Honor. The argument that the trustee should have had an opportunity to respond to the deficiencies articulated. Yes, Your Honor. On page 139 of the record, there is a hearing in which the only purpose for that hearing was to determine trustee compensation. The only purpose for it was to determine that compensation itself. This is the hearing that's set forth in 338-1. That says that after a notice and hearing, a court may award reasonable compensation. So in the record on page 139, the only reason why the trustee was in that court that day was to determine his own compensation. He has the burden to put forth before the court to establish that compensation. He is not entitled to advance notice of any concerns that he has. In fact, such argument from the trustee rests on his entitlement theory, that he's entitled to the percentages listed in 326. Perhaps if he was entitled to those percentages, he would have greater weight in arguing that the court should have given him a heads up about deviating from those entitlements. But such an entitlement theory is incorrect. He has the burden of proof in establishing his compensation, that the court has discretion, according to the statute, to award a lesser amount from. Because the trustee did not meet his burden of proof, the court awarded him compensation that was an amount that the trustee himself provided. The trustee provided that amount, I believe, on page 90 of the record. That $8,020 amount wasn't something that the trustee just picked out of the air or thought in his head a few factors and came up with $8,020. That amount was given by the trustee himself. And so the trustee's due process argument is incorrect and should not be followed by this court. He received all the process he was entitled to. On page 145 of the appendix, the court says, here's what I see and I'll let you speak to it. I don't think the trustee adequately supervised, etc. He went through it and provided an opportunity for response. So the trustee had an opportunity to respond. The bankruptcy court outlined his issues, gave the opportunity to the trustee's counsel to respond to those issues, and the counsel did not adequately answer the bankruptcy court's concerns. In addition, the bankruptcy trustee was not unaware of what the bankruptcy court would have an issue with. It addressed mainly a substantial delay in administering the estate over a year long. So that in addition to the only purpose for that hearing, to determine compensation, renders the due process argument as a flawed argument. On page 143 of the record of the appendix, the U.S. trustee makes this odd statement. We agreed to the $11,000, but that's not the answer to your question. Your Honor, again, I'm asking something absolutely extraordinary. Do you have any idea what? Your Honor, I can't speak to that. I'm not exactly sure what that means. Traditionally, a bankruptcy trustee will meet with a U.S. trustee. The U.S. trustee has a duty to review applications and can ask the bankruptcy trustee to lower the compensation amount. But I'm not exactly sure what I think it was Mr. Frankel was discussing in that hearing. There would appear to be two things that the court could have been clearer about. One, it could have said as an initial matter that it was starting from its starting point was the commission fee to which the trustee would ordinarily be entitled and that the deviations from that were based on those deficiencies, but that the commission was the starting point. That could have been stated. And when the bankruptcy court found that the performance was subpar, it could have set a fee not based on hourly. Correct me. Those would be the two things that the bankruptcy court apparently got wrong. If one decides that the commission basis is unreasonable under the circumstances, what does the bankruptcy court default to? Your Honor. It's sort of an abstract question, but I'm having trouble seeing the problem here. The district court found that the trustee's performance was inadequate and defaulted to Lodestar. What else in your view could it default to if you could help me with that? Your Honor, according to Section 326, there's a limit that bankruptcy courts cannot go beyond. They can go up to that limit and yet not go beyond. So the trustee argued during his time that the sections that are listed in 326, the limits that are listed in 326 are presumptively reasonable and this court should rule in accordance with that presumption. The amounts that are listed in 326 aren't necessarily a starting point. Courts have the discretion to award up to that amount and not go beyond it. It uses words such as in excess to or not to exceed. There does appear to be a cap. Correct, yes, a compensation ceiling. Where courts start isn't included in the statute. So it could start at a much lower rate or it could essentially go from a bottom-up approach or a top-down approach. But there's no presumptive starting point. I understand. You certainly continue if you wish. We have no further questions. Your Honor, I'd like to address one other point, and that's concerning the doctrine against implied repeal. Only a year and a half ago, this court decided in the case Enri Maharaj that this court would not erode past bankruptcy practice without a clear intent from Congress of its intention to do so. There was no clear intention of Congress to erode past bankruptcy practice because it did not alter the discretion that courts have in subsection A2 of 330. In addition, it did not alter section 326 in any way. Section A2 gives courts discretion by stating that the court may, on its own motion, award less compensation than the trustee himself requests. And then section 326, which is entitled Limitation on Trustee Compensation, sets forth limits. In failing to amend either of these sentences, past bankruptcy practice should be continued or should continue on with the 2005 amendments. Prior to 2005, it was understood that the discretion that courts have in subsection A2 represents discretion that's not limited by this nebulous concept of extraordinary circumstances or an even more nebulous concept of rare and unusual circumstances. Instead, courts had discretion to award less compensation than the trustee requests. In addition, courts also examined 326 as a limitation and not simply as a starting point or a presumption. Absent any intention from Congress to change those aspects of trustee compensation, this court should continue that forward. There were four stated purposes for the 2005 amendments. And none of them concern trustee compensation. None of them concern maximizing trustee compensation or increasing it in any way. In addition, the specific section that amended, section 330, mentioned no intent to maximize trustee compensation or get rid of the discretion that courts have under subsection A2. And so therefore, this court should continue forward past bankruptcy practice without any intention to do so, to change it. Your Honor? I did not have a question. Very well. If we go with the Ninth Circuit, how would you articulate extraordinary circumstances? Walk us through, if you could. I'm a bankruptcy judge. There's some stuff here I don't really like. I don't think the trustee performed up to snuff. There ought to be a reduction from the statutory maximum presumptive fee. How would I do that? Your Honor, I have two responses to that. First is a point about the decision, the Enri Salgado-Nava decision. The precedential value is the same, and this district would be a district court. It's not the Ninth Circuit, but the Ninth Circuit bankruptcy appellate panel. No, I understand. On to my second point. In deciding what extraordinary circumstances is a very difficult task. As this court noted just earlier when I was asking the trustee and the counsel from NABT to address that,  That's why I'm asking you. Well, it's a very good question, and I encourage Your Honors to ask Mr. Shumate the exact same question. I think we did. The difficulty in extraordinary circumstances is that there's no indication from Congress that it intended that. It's completely absent from statute, and therefore it's a very pliable concept that can be very minimal or very maximum, however the bankruptcy courts want to apply it. But it would be a factual? Yes, Your Honor. Analysis, would it not? It would be a factual analysis that would have to be determined on a case-by-case basis. However, as the U.S. trustee said in its brief submitted to the court, Mr. Gold's actions, the trustee in this case, satisfied the extraordinary circumstances test that it would have simply of a lengthy delay, or an unduly delay, I believe is what they said. And the reduction here amounted to a 50% reduction, actually. Yes. I mean, when you get right down to it. Yes. Is there any... And I would presume that seems to be the maximum reduction, because frankly, if a trustee performs so poorly that a bankruptcy judge thought that he or she should receive a commission or fee at less than 50% of the statutory maximum presumption, then that person probably shouldn't be a bankruptcy trustee, right? I mean, it's like Lake Wobegon. Everybody should be above average, right? Yes. Well, we certainly expect and lean on bankruptcy trustees in the bankruptcy system to have a very high work ethic and complete their duties well. They serve a very important function in the bankruptcy system, and we desire them to meet up to that standard, that be above average. Having this extraordinary circumstances test would only work against that. It would only incentivize mediocre work, as Your Honor pointed out earlier during Mr. Shumate's argumentation. It would not incentivize trustees to do their best to maximize their own compensation. It would only award mediocre work or encourage it. And as one of the principled focuses of the trustees' work is to maximize the debtor's estate for the benefit of the creditors, it would eventually hurt creditors in the long run. Thank you, Mr. Wallin. Therefore, for the reasons stated during the oral argument and the brief submitted to the court, we ask this court to affirm the lower court's rulings. Thank you very much. Thank you. Mr. Shumate. Thank you, Your Honor. Mr. Shumate, what, in your view, can a bankruptcy permissibly do if it finds a trustee performance unsatisfactory? Let's start with that. If it finds extraordinary circumstances. No, no. I'd like to stick to statutory. Well, just if you would answer my question. He finds the—well, let's concede that they're extraordinary for purposes of my question. Okay. First, the court would still have to award a commission. I think that's plain enough from the statute. Second, the ultimate commission would have to be at least derived from Section 326, using that as a starting point. And if the bankruptcy judge says that, it's using that as a starting point, then what? He has to provide, and I think this goes back to the Salgado-Nava standard, which I think is the best articulation of a standard. There has to be a rational relationship between the commission and the trustees' services. So there has to be some specific findings of fact that give a rational explanation. So let me give two examples of what a court could do. So, for example, if a court found that the trustees' actions were extraordinary and caused injury to creditors, for example, or caused bank fees to be accumulated, the court could reduce the trustees' commission amount. Is extraordinary circumstances a statutory term? It's not. I think it's a reconciliation of competing policies in the statute. A2 says courts can award less compensation, but then you have the mandatory duty in A7. The best way to reconcile that is to say that Congress wouldn't have wanted the maximum statutory commission to be awarded only in extraordinary cases. So to give those two examples, a court could reduce the trustees' commission in an amount that's commensurate with any injury caused by his performance, or second, he or she could award reduced percentages. So instead of 5% in the amount up to a million under Section 326, the court could award 3%. So we could send this back and he could award 50%. No, I don't think we would be in the exact same spot on remand, and I wanted to respond to that point. If you judge the trustees' performance under the right legal standard, starting first from the fact that he has to be awarded a commission and the court has to at least start from Section 326 and ultimately arrive at a fee that bears a rational relationship to the trustees' performances, we don't think there's anything extraordinary about this case that could possibly justify a 50% reduction in his fees. The trustee would welcome the opportunity to go back to the bank. The U.S. trustee disagrees with you. It's interesting they disagree on appeal, but not in the bankruptcy court, Your Honor. Mr. Frankel was on the ground at the bankruptcy court. What do you say about that? The deep thinkers back at the DOJ headquarters in Washington take a look at a case and they say, ah, I think the judge got it right this time. Let's file a brief. It's very interesting. I think it raises the question of what... Doesn't that tell us the case is going to come out exactly the same way if we send it back? Because now we have the U.S. trustee saying, Judge, having thought about it a little more, you know what? You got it right. We just don't know what would happen on remand. Well, we know what the U.S. trustee would say. Well, he didn't...nobody heard from the trustee. The trustee never had an opportunity... We've heard from the trustee. But the trustee hasn't set forth any evidence or testified or put... Oh, the trustee wouldn't testify in this case. Yeah, I think he would. He would welcome the opportunity. He often goes before the bankruptcy court. The trustee's position is right here in this green brief. In terms of how to read the statute, but in terms of his performance... No, not just how to read the statute, but the outcome of this case. The outcome of this case right now should be vacated and remanded. No, sir. That wasn't responsive. The trustee never had an opportunity to respond to the court's concerns. I think Judge Becker got it exactly right in his opinion for the Third Circuit and Busy Beaver that the best way to do this is to have courts give advance notice if they're going to reduce a bankruptcy practitioner's compensation because they typically have no idea what the court's concerns are going to be if there's no objections. Did the... As Amicus pointed out, Court Assigned Amicus pointed out, wasn't that the purpose of the hearing? What was the purpose of the hearing? The purpose of the hearing was to give notice, see if anybody has any objections to the trustee and his law firm's compensation. Nobody did. You don't have to have a hearing for that, right? You don't, no. I mean, every interested party gets a copy of the trustee's report, right? It's filed on the document. So the judge doesn't have to convene a hearing in order to entertain objections. Right, and then that begs the question, could he strike the trustee's compensation without even holding a hearing? But that's the point. That's the point of Judge Duncan's question. If he was going to approve the requested amount, he just signs it, right? He could. But the fact that he held the hearing communicated to the trustee and trustees' counsel, hey, you know, come ready to carry a burden here. I respectfully disagree, Your Honor. I don't think that's a fair inference. I think this court typically will hold hearings on bankruptcy counsel's trustees' fees. And just finally, just to respond to this point about Judge Becker and what he said in that opinion, the reasons why you want advance notice in a case involving Chapter 7 trustees' compensation is because the statute creates an expectation that the trustee is going to be awarded the maximum fee. And if the trustee has met with the United States trustee and nobody else has objected, no creditors have objected, they're walking to that hearing blind. And, of course, if we affirm here, nobody's going to think that anymore in the Fourth Circuit. Well, we respectfully disagree with that view, Your Honor. We asked the question. Well, no, you don't disagree that anybody's going to expect there's a presumption of maximum compensation just for asking for it. If we affirm this case? No, Your Honor. Okay. I mean, it would put the trustees all over the circuit on notice that, hey, you know, you've got to not only do a good job, but you've got to be prepared to come and show that you did a good job if the judge has questions. Just to quickly conclude, I don't think the court needs to get into the trustees' performance because at the end of the day, the court didn't award the trustee commission that's anyway based on Section 326. The proper remedy when the lower court gets the legal standard wrong is to vacate and remand. Let us litigate this out of the bankruptcy court. Thank you, Your Honors. Thank you very much.
judges: Allyson K. Duncan, Andre M. Davis, Henry F. Floyd